**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Hermosillo, | No. CV-15-02052-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Caliber Home Loans Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant's fully briefed Motion to Dismiss and Supporting Memorandum (Docs. 24, 33, 34). Defendant seeks dismissal of Plaintiff's Verified Complaint (Doc. 1-1 at 5-16), which alleges seven causes of action arising from the completed foreclosure of Plaintiff's home. The case was removed to the United States District Court from the Maricopa County Superior Court of Arizona by Notice of Removal filed on October 12, 2015 (Doc. 1). The Federal Court has original jurisdiction on the basis of diversity of citizenship as well as federal question pursuant to 28 U.S.C. §§ 1441(a), 1441(b), and 1331. The parties have consented to proceeding before a Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c) (Docs. 8, 17).

After reviewing the parties' submissions, the Court finds that Plaintiff has failed to set forth facts in his Verified Complaint that, if true, set forth a cause of action in Counts I-VII. Nor can the deficiency be cured by amendment. Therefore, Defendant's Motion to Dismiss (Doc. 24) will be granted. The Court will dismiss the Complaint (Doc. 1)

with prejudice.

## I. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (i) the lack of a cognizable legal theory or (ii) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F. 3d 1240, 1242 (9th Cir. 2011), *cert. denied*, *Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In deciding a Rule 12(b)(6) motion to dismiss, courts must consider all well-pled factual allegations in the Complaint as true and interpret them in a light most favorable to the non-moving party. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## B. Factual Allegations Assumed to Be True

The Court assumes as true all well-pled factual allegations contained in Plaintiff's Verified Complaint and draws all reasonable inferences therefrom. For purposes of this Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, the Court disregards any of the Defendant's factual contentions to the contrary. *See, e.g., Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."). However, the Court may still consider any internal discrepancies or factual conflicts it finds within the Complaint that undermine its plausibility. *See, e.g., Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31–32 (9th Cir. 2007) (finding that a complaint failed to state a claim upon which relief could be granted based upon factually inconsistent allegations in a complaint that were not pleaded in the alternative, but incorporated into each cause of action).

The Court also takes judicial notice of the documents attached to the Motion to Dismiss that were filed with the Maricopa County Recorder as they (i) are not subject to reasonable dispute, (ii) are generally known within the territorial jurisdiction of this Court, and (iii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned pursuant to Fed. R. Evid. 201(b). The Court may consider matters of public record as well as material properly submitted as part of a complaint when deciding a motion to dismiss without converting the motion into a motion for summary judgment. *See Lee*, 250 F.3d at 688-89 (noting that the court may take judicial notice of undisputed "matters of public record"); *Barron v. Reich*, 13 F. 3d 1370, 1377 (9th Cir. 1994).

On March 7, 2013, Plaintiff signed a promissory note secured by a recorded Deed of Trust for the purchase of a home in Avondale, Arizona. Defendant is the named beneficiary on the Deed of Trust. Plaintiff failed to make payments due on his note.[1]

---

[1] Though Plaintiff argues that he was not in default based upon a "show me the note" theory, as a matter of law Plaintiff's theory has been soundly rejected by this Court. *See Diessner v. Mortgage Elec. Registration Sys.,* 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) ("Arizona's non-judicial foreclosure statute does not require presentation of the original note before commencing foreclosure proceedings."); *Kane v. Bosco*, No. 10–

Plaintiff submitted a loan modification application under the Home Affordable Modification Program ("HAMP") to Defendant in June 2014.

The trustee under the Deed of Trust commenced a non-judicial foreclosure against the property. A Notice of Trustee's Sale was executed on September 30, 2014 and sent to Plaintiff at the address of the property which was Plaintiff's address of record at the time. On December 27, 2014, Defendant also sent Plaintiff a letter notifying Plaintiff that it could not complete a review of his account for a loan modification because "[o]ur records indicate there are less than 15 days before the scheduled foreclosure sale of the above-referenced property." (Doc. 33 at 23). Plaintiff received the December 27, 2014 letter, acknowledging that it gave Plaintiff "his FIRST real indication of an impending Trustee Sale." (Doc. 33 at 2).

The property was sold at a public foreclosure auction on January 9, 2015. Plaintiff did not seek an injunction prior to the sale. Defendant, as the foreclosing beneficiary under the Deed of Trust, purchased the property and recorded a Trustee's Deed Upon Sale with the Maricopa County Recorder on January 21, 2015. Plaintiff filed a Verified Complaint in Maricopa County Superior Court on September 8, 2015 contesting the sale of his home. The case was removed to U.S. District Court on October 12, 2015. Plaintiff requests that the Court: (i) void the trustee's sale of his home and transfer title of the home to Plaintiff free and clear of any liens; (ii) declare the promissory note paid in full and all amounts due under the note null and void; (iii) award Plaintiff compensatory damages in the amount of $150,000 or a greater amount proven at trial; (iv) award Plaintiff punitive damages; and (v) award Plaintiff reasonable attorney's fees and costs of suit.

---

CV–01787–PHX–JAT, 2010 WL 4879177 (D. Ariz. Nov. 23, 2010) (agreeing "with the unanimous authority within the District of Arizona" that a plaintiff's "show me the note" argument is meritless); *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 783 (Ariz. 2012) ("[T]he deed of trust statutes impose no obligation on the beneficiary to 'show the note' before the trustee conducts a non-judicial foreclosure."). Based upon the undisputed factual record, the Court finds that Plaintiff defaulted on the note.

**C. Analysis**
  **1. The Complaint Fails to Satisfy the Pleading Requirements Set Forth in Fed. R. Civ. P. 8**

Plaintiff's Complaint alleges the following causes of action: (1) declaratory relief and quiet title; (2) promissory estoppel; (3) fraud; (4) wrongful foreclosure; (5) breach of covenant of good faith and fair dealing; (6) unjust enrichment; and (7) a violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq*. Specifically, Plaintiff claims that he made a loan modification application with the Defendant but "never got a response from Caliber as to said modification." (Doc. 1-1 at 6-7). However, Plaintiff also asserts that he met the qualifications for a loan modification and was induced to act by false, deceptive, misleading promises made by the Defendant. Plaintiff states that Defendant assured Plaintiff that if he made an application and "successfully completed his trial payment plan his mortgage would be modified and he would not be foreclosed on." (*Id*. at 11). Plaintiff alleges that Defendant breached its duty of care to Plaintiff and the implied covenant of good faith and fair dealing by exercising its foreclosure power despite Plaintiff's "making application and providing Defendant with everything they asked of him including timely fulfillment of his payments under the plan." (*Id*.). Plaintiff finally claims that the foreclosure should not have gone forward with "an active and timely loss mitigation application pending." (*Id*. at 12). The Court finds that Plaintiff's conclusory allegations regarding Defendant's response to Plaintiff's mitigation loss application are internally inconsistent, not pled in the alternative, and negatively impact the plausibility of Plaintiff's Verified Complaint. The Court further finds that the Complaint fails to comply with the pleading standards set forth in Fed. R. Civ. P. 8. *See Nevijel v. N. Coast Life Ins. Co.,* 651 F.2d 671, 673–74 (9th Cir. 1981) (affirming dismissal of complaint that was "verbose, confusing and almost entirely conclusory"). The Court will not provide Plaintiff leave to amend the Complaint as amendment would be a futile act for the reasons discussed below.

**2. The Claims in the Complaint are Waived Pursuant to A.R.S. § 33-811(C)**

The Arizona Supreme Court has unequivocally held that a trustor "who has defenses or objections to a properly noticed trustee's sale has one avenue for challenging the sale: filing for injunctive relief." *BT Capital, LLC v. TD Serv. Co. of Arizona*, 275 P.3d 598, 600 (2012). ARIZ. REV. STAT. § 33-811(C) provides in relevant part:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33–809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. Mountain standard time on the last business day before the scheduled date of the sale . . . .

Pursuant to ARIZ. REV. STAT. § 33-811(C), if the trustor fails to obtain an injunction prior to the trustee's sale of the property, the trustor has waived all pre-sale defenses and objections to the sale. *Id.*; *see also Tapper v. Deutsche Bank National Trust Company*, No. CV-11-00088-PHX-ROS, 2012 WL 12501082, at *2 (D. Ariz. June 20, 2012) ("If a trustee's sale is completed, A.R.S. § 33-811(C) means 'a person…cannot later challenge the sale based on pre-sale defenses or objections.'") (quoting *BT Capital, LLC*, 275 P.3d at 600).

In *Madison v. Groseth*, 279 P.3d 633, 637 (Ariz. Ct. App. 2012), the Arizona Court of Appeals held that § 33-811(C) also applies to tort claims based on objections to the validity of the trustee's sale. In addition, the waiver under § 33-811(C) includes any claim for damages that is dependent on the foreclosure sale. *See Morgan AZ Financial, LLC v. Gotses*, 326 P.3d 288, 290-91 (Ariz. Ct. App. 2016) ("Under A.R.S. § 33–811(C), a trustor who fails to enjoin a trustee's sale waives his claims to title of the property upon the sale's completion . . . and also waives *any claims* that are dependent on the sale[.]") (emphasis added) (citations omitted); *see also Madison*, *supra*; *Tapper*, 2012 WL 12501082 at *2. ARIZ. REV. STAT. § 33-811(C), however, does not restrict claims for

relief that are independent of voiding the trustee's sale. *See Snyder v. HSBC Bank, USA, N.A.,* 913 F.Supp.2d 755, 770 (D. Ariz. 2012), *appeal dismissed* (Dec. 10, 2013).

Pursuant to § 33-809(B), the trustee must mail the Notice of Trustee Sale to each person with an interest in the property to the address listed in the county records. In analyzing the issue of notice, the *Madison* Court held that § 33-811(C) "does not require the trustee to comply with the mailing requirements of § 33-809 for the waiver provision to apply later to the trustor." *Madison*, 279 P.3d at 637. Therefore, regardless of whether the Notice of Trustee Sale has been served on the trustor pursuant to § 33-809, § 33-811(C) waives the trustor's defenses and objections. *Id.* ("Although § 33–809(C) mandates service on trustors, we decline to interpret the reference to § 33–809 in § 33–811(C) as requiring service on trustors as a prerequisite to application of the waiver provision . . . ."). However, noting that the plaintiff had received sufficient notice to object to the foreclosure before it occurred, the *Madison* Court in dicta recognized that it's interpretation of § 33-811(C) could "deprive a trustor of due process if that trustor is not given sufficient notice of the trustee's sale to obtain an injunction to the sale." *Id*.

Here, it is undisputed that Plaintiff defaulted on his promissory note. It is undisputed that notice of the trustee's sale was sent to Plaintiff's address of record at the time the notice was issued as required by ARIZ. REV. STAT. § 33-809(B) and that actual notice was received by Plaintiff in time to seek a preliminary injunction against the sale. It is also undisputed that Plaintiff did not seek, much less obtain, a preliminary injunction prior to the foreclosure sale pursuant to Arizona Rule of Civil Procedure 65.

Reading the Complaint in a light most favorable to the Plaintiff, and assuming as true all well-pled factual allegations, the Court concludes that Counts I-VII in Plaintiff's Complaint are all based on facts which could have been raised as a defense or objection to the trustee's sale. Further, all of the claims in the Complaint challenge the foreclosure sale and are founded upon the sale's alleged invalidity. *See Glava v. JPMorgan Chase Bank, N.A.*, No. 1 CA–CV 13–0719, 2015 WL 849685, at *4 (Ariz. Ct. App. Feb. 26, 2015) (concluding that a borrower's claims for breach of contract, breach of the duty of

good faith and fair dealing, fraud, consumer fraud, breach of a fiduciary relationship, and intentional infliction of mental distress were not waived pursuant to ARIZ. REV. STAT. § 33-811 where the claims did "not challenge the sale and [were] not founded upon the sale's invalidity.").

For instance, Count I asserts that the foreclosure should be declared void.[2] The claim for promissory estoppel (Count II) alleges the trustee's sale constituted a breach of a promise that the loan modification process would "avert a foreclosure." The claim for fraud (Count III) alleges that the trustee's sale should not have occurred because a loan modification application was fraudulently induced.[3] Count IV asserts "wrongful foreclosure" and alleges that the foreclosure was illegal.[4] The claim for breach of the covenant of good faith and fair dealing (Count V) alleges the trustee's sale violated an oral[5] or written contractual agreement that Plaintiff's completion of his "trial payment plan" would result in a loan modification and foreclosure would not occur. The claim for unjust enrichment (Count VI)[6] alleges that Defendant was unjustly enriched by the

---

[2] Count I is styled as an action for declaratory relief and quiet title. *See Zubia v. Shapiro*, No. 1 CA-CV 15-0404, 2016 WL 5462039, at *3 (Ariz. Ct. App. Sept. 29, 2016) (affirming trial court's dismissal of a quiet title claim under ARIZ. REV. STAT. § 33-811(C)). As explained below, Count I may be alternatively dismissed as Plaintiff has not tendered the amount due on the mortgage.

[3] The fraud claim is insufficient on its face pursuant to Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) requires Plaintiff to state with particularity the circumstances that constitute the fraud, pleading such matters as the time, place and content of each false representation, the name and authority of the speaker, the misrepresented fact, Defendant's knowledge of its falsity, an intent to defraud, justifiable reliance, and damages. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[4] The Arizona Court of Appeals has explained that a claim for wrongful foreclosure, assuming that it is a cognizable legal theory, is "subject to the statutory requisites of A.R.S. § 33–811(C) and thus barred for failing to seek the required injunctive relief." *Zubia*, 2016 WL 5462039, at *3.

[5] "Absent a written agreement to modify the loan, any claim based upon an oral contract to modify the loan is barred by the statute of frauds." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 1127, 1137 (E.D. Calif. Sept. 30, 2013).

[6] The unjust enrichment claim is insufficient on its face pursuant to Fed. R. Civ. P. 8. Fed. R. Civ. P. 8 requires that a cause of action be pled with more than conclusory allegations. An unjust enrichment claim requires proof of five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment,

foreclosure itself which should not have occurred. The RESPA claim (Count VII) alleges that the foreclosure should not have gone forward because Plaintiff submitted a loan modification application.

The Court concludes that Plaintiff has waived his claims for relief alleged in Counts I-VII pursuant to ARIZ. REV. STAT. § 33-811(C). *See Steinberger v. McVey*, 318 P.3d 419, 430 (Ariz. Ct. App. 2014) ("Pursuant to A.R.S. § 33-811(C), once a non-judicial foreclosure sale has taken place, the only defense that may be raised is lack of notice of the sale."). The Court finds that leave to amend would be futile as no additional facts would undo the waiver of these claims. *See Margaritis v. U.S .Bank, N.A.*, 579 F. App'x 590, 591 (9th Cir. 2014). The Complaint will be dismissed with prejudice.

### 3. Alternate Grounds for Dismissing Plaintiff's Claims

#### i. HAMP Does Not Provide a Private Right of Action

The gravamen of Counts I-VI in the Complaint is Plaintiff's claim that he was entitled to a loan modification pursuant to HAMP. All counts in the Complaint incorporate by reference the following allegation:

> Under the FHA HAMP Program and Defendants contract with the federal government as to same, foreclosure actions by servicers must be postponed for all borrowers who meet minimum FHA HAMP eligibility requirements. Not only did plaintiff meet the minimum requirements he was entitled to the issuance of the modification.

(Doc. 1-1 at 7).

Congress created HAMP under the Emergency Economic Stabilization Act of 2008, Pub.L. 110–343. *See also* 12 U.S.C.A. § 5219. HAMP was established to help struggling homeowners avoid foreclosure through loan modifications. *Rush v. Mac,* 792 F.3d 600, 605-06 (6th Cir. 2015). If a borrower qualifies for a HAMP loan modification, the borrower does not automatically get a modification. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 557 (7th Cir. 2012). Instead, the servicer first "implement[s] a Trial Period Plan ("TPP") under the new loan repayment terms it formulated" according to

---

and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011).

1 the HAMP guidelines. *Id.* If a borrower successfully completes the conditions of the TPP, then the servicer has to offer a permanent modification. *Id.*

"[M]ost district courts in the Ninth Circuit, as well as the Seventh and Eleventh Circuit Courts of Appeals, have held that even though entering into the HAMP [Servicer Participation Agreement] imposes certain obligations on participating servicers and lenders to take steps to avoid foreclosures, agreements under the HAMP [Servicer Participation Agreement] do not provide an express or implied private right of action for borrowers as third party beneficiaries." *Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209, 1224 (S.D. Cal. 2012); *see also Casault v. Fed.Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1123 n.8 (C.D. Cal. 2012) ("[I]t is well established that there is no private cause of action under HAMP."); *Simon v. Bank of Am., N.A.*, No. 10–cv–00300–GMN–LRL, 2010 WL 2609436, at *7 (D. Nev. June 23, 2010) ("[C]ourts have consistently held that [HAMP] does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan."). Courts have recognized that "it would be unreasonable for a qualified borrower seeking a loan modification to rely on the HAMP servicer's agreement as granting him enforceable rights since the agreement does not actually require that the servicer modify all eligible loans." *Kimball*, 881 F. Supp. at 1224 (internal quotation marks and citation omitted).

Based on the foregoing authority, because Counts I-VI are premised on Plaintiff's assertion that he was entitled to a loan modification, the counts must be dismissed for lack of a private right of action under HAMP. *See, e.g.*, *Ruvalcaba v. Citibank CitiMortgage, Inc.*, CV 12-4655-JFW (AJWx), 2012 WL 12894753, at *4 (C.D. Cal. 2012) (dismissing with prejudice "all of Plaintiff's claims predicated on a violation of HAMP," which included "(1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud, deceit and/or negligent misrepresentation; (4) negligence; (5) wrongful foreclosure; and (6) violation of unfair competition law."); *Marks v. Bank of America*, No. 3:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *6 (D. Ariz. June 22,

2010) ("Because Plaintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim, Defendant's Motion to Dismiss is warranted."); *Manabat v. Sierra Pac. Mortg. Co.,* 2010 WL 2574161 at *11 (E.D. Cal., June 25, 2010) (dismissing plaintiff's wrongful foreclosure claim because there is no private right of action for HAMP violations against lenders that receive HAMP funds); *Solomon v. Aurora Loan Services LLC*, No. CIV. 2:12–209 WBS KJN, 2012 WL 2577559, *5 (E.D. Cal. July 3, 2012) ("[T]o the extent that plaintiff bases her negligence claim on an alleged entitlement to a modification under HAMP, her claim is an improper attempt to privately enforce HAMP when Congress granted no such private right of action."); *Cleveland v. Aurora Loan Services, LLC,* No. C 11–0773 PJH, 2011 WL 2020565, at *5 (N.D. Cal. May 24, 2011) (because a borrower is not a third-party beneficiary of any HAMP contract between a servicer or lender and the government, a borrower "has no standing to assert a claim of breach of contract or promissory estoppel based on alleged HAMP violations . . . .").

### ii. Count I: Declaratory Relief and Quiet Title

"A quiet title action seeks a judicial determination of adverse claims in order to clear the title of disputed property." *Cook v. Town of Pinetop–Lakeside,* 303 P.3d 67, 70 (Ariz. Ct. App. 2013) (citing 74 C.J.S. *Quieting Title* § 1 (2013)). "In Arizona, the quiet title action is codified in A.R.S. § 12–1101 (2003)." *Id.* ARIZ. REV. STAT. § 12–1101 provides that:

> An action to determine and quiet title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action.

A plaintiff bringing a quiet title action must allege (i) his or her ownership of the property and (ii) an adverse claim by the defendant. *Palmer v. Sunnyside,* 61 P.2d 444, 448 (1936) ("[U]nder the law the plaintiff in [a quiet title action] is not required to do anything more than allege his ownership of the property and the adverse claim of defendant . . . ."). The

defendant then must prove title. *Id.* In Arizona, "a plaintiff cannot bring a quiet title action unless she [or he] has paid off her [or his] mortgage in full." *Bergdale v. Countrywide Bank FSB,* No. CV–12–8057–PCT–GMS 2012 WL 4120482, at \*6 (D. Ariz. Sept. 18, 2012) (citing *Farrell v. West,* 114 P.2d 910, 911 (Ariz. 1941) ("[I]f it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless [the plaintiff-mortgagor] pays off such mortgage lien.")); *see also Allison v. State,* 420 P.2d 289, 292 (Ariz. 1966) (en banc) ("In any action to quiet title, a plaintiff must succeed on the strength of his own title rather than the weakness of his adversary's.").

Plaintiff has not tendered the amount owed on the mortgage on the property at issue. *See Farrell,* 114 P.2d 910 (1941) (refusing to quiet title until and unless the plaintiff tenders the amount owed, as required in equity). Therefore, dismissal of Count I is warranted on this alternate ground.[7]

### iii. Count IV: Wrongful Foreclosure

The Court finds that Plaintiff's claim for wrongful foreclosure fails as the claim lacks a cognizable legal theory. "Arizona has not recognized a cause of action for wrongful foreclosure." *Zubia*, 2016 WL 5462039, at \*3 (citing *In re Mortg. Electronic Registration Systems, Inc.,* 754 F. 3d 772, 784 (9th Cir. 2014) ("Arizona, though a nonjudicial foreclosure state, has not recognized the tort of wrongful foreclosure.")). "Although a federal court exercising diversity jurisdiction is 'at liberty to predict the future course of [a state's] law,' plaintiffs choosing 'the federal forum . . . [are] not entitled to trailblazing initiatives under [state law].'" *Cervantes v. Countrywide Home Loans, Inc.,* 656 F. 3d 1034, 1043 (9th Cir. 2011) (quoting *Ed Peters Jewelry Co. v. C & J Jewelry Co., Inc.,* 124 F.3d 252, 262–63 (1st Cir. 1997) (affirming dismissal of a wrongful foreclosure claim when no such action existed under state law)). Even

---

[7] The Court need not address the claim for declaratory relief as under Arizona law, a declaratory judgment action is not a separate cause of action, but a remedy for an underlying cause of action. *See Steers v. CitiMortgage, Inc.,* No. CV–11–1144–PHX–GMS, 2011 WL 6258219, at \*3 (D.Ariz. Dec. 15, 2011) (citation omitted). Since the underlying cause of action fails, the declaratory judgment action also fails.

assuming that a cause of action for wrongful foreclosure does exist, which it currently does not, the Ninth Circuit has recognized that the likely elements of such a claim are a lack of default, or tender to cure the default, or an excuse from the tender requirement. *In re Mortg. Electronic Registration Systems, Inc.,* 754 F.3d at 784; *see also Herring v. Countrywide Home Loans, Inc.,* No. 06-2622, 2007 WL 2051394, at *6 (D. Ariz July 13, 2007) (creating from A.R.S. § 33-870(A) a duty of care by a trustee to exercise the power to sell fairly and in good faith). To allow a cause of action for wrongful foreclosure in this case, the Court would have to extend the duty of care to include the beneficiary of the deed of trust. It has been stated that the tort of wrongful disclosure is ripe after a foreclosure sale has occurred. *See Jones v. Bank of America, N.A.,* No. CV–09–2129–PHX–JAT, 2010 WL 2228517, at *3 (D. Ariz. June 1, 2010).

Even if the Court concluded that wrongful foreclosure is a cause of action under Arizona law, and assuming as true all of Plaintiff's well-pled facts, the facts alleged fail to support a legal claim. Plaintiff was in default. He did not tender to cure the default, nor is he excused from doing so. The trustee's sale was conducted in accordance with the law. Therefore, dismissal of Count IV is warranted even if Plaintiff's claims are not waived under ARIZ. REV. STAT. § 33-811(C).

### iv. Count VII: RESPA

RESPA "regulates the market for real estate 'settlement services' . . . ." *Freeman v. Quicken Loans, Inc.,* ––– U.S. ––––, 132 S.Ct. 2034, 2037–38, 182 L.Ed.2d 955 (2012) (quoting 12 U.S.C. 2602(3)). "Settlement service means any service provided in connection with a prospective or actual settlement[.]" 24 C.F.R. § 3500.2. Settlement means "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." *Id.* Congress' purpose in enacting RESPA was to ensure consumer protection for borrowers interacting with entities servicing federally related mortgage loans. *See McLean v. GMAC Mortg. Corp.,* 398 Fed. Appx. 467, 471 (11th Cir. 2010) (citing 12 U.S.C. § 2605). Specifically, Congress

intended RESPA to effect changes in the settlement process by (i) providing advance disclosure of settlement costs to home buyers, (ii) "eliminat[ing] . . . kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services[,]" (iii) reducing the amount of money home buyers must place in escrow accounts for the payment of their real estate taxes and home insurance, and (iv) modernizing land title record keeping. 12 U.S.C. 2601(b).

RESPA also prescribes actions to be followed by loan servicers in responding to loan modification requests. *See Miller v. Bank of New York Mellon,* No. 2:16-cv-493-FrM-99MRM, 2017 WL 88946, at *2 (M.D.Fla. Jan. 10, 2017) (finding that plaintiff failed to submit a loss mitigation application that would have triggered the mortgage servicer's obligations under the regulation). These prescribed actions are set forth in the Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) promulgated by the Consumer Financial Protection Bureau ("CFPB") pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C.§ 5581, and RESPA. Regulation X became effective on January 10, 2014. 78 FR 10696–01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). Regulation X, Subpart C requires a mortgage servicer to respond in a timely manner to a borrower who submits a completed loan modification, or loss mitigation, application. 12 C.F.R. § 1024.41(b)(2)(i)(B), (c), and (d). In pertinent part, Regulation X further provides that if a borrower submits a "complete loss mitigation application" before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless (1) the servicer informs the borrower that the borrower is not eligible for any loss mitigation option (and any appeal has been exhausted), (2) a borrower rejects all loss mitigation offers, or (3) a borrower fails to comply with the terms of a loss mitigation option such as a trial modification. 12 C.F.R. § 1024.41(f)(2). However, none of the loss mitigation procedures apply to a loss mitigation application received 37 days or less before a foreclosure sale. 12 C.F.R. § 1024.41(f), (g).

Regulation X defines "complete loss mitigation application" as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). If an application is incomplete, "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." *Id.* "Once the borrower submits the requested materials or if the servicer initially determines that the application is complete, then the application is considered 'facially complete' for purposes of § 1024.41." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016) (quoting 12 C.F.R. § 1024.41(c)(2)(iv)).

Nothing in § 1024.41 imposes a duty on a mortgage servicer to offer a borrower a particular loss mitigation option. 12 C.F.R. § 1024.41(a). Nor does § 1024.41 "create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option . . . ." *Id.*

However, "[a] borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))." 12 C.F.R. § 1024.41(a); *see also Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If a servicer fails to evaluate a borrower's loss mitigation application within 30 days [pursuant to § 1024.41(c)(1)], the borrower has a private right of action under RESPA.") (citing 12 C.F.R. § 1024.41(a)); *Smith v. Nationstar Mortg.*, Case No. 15-13019, 2015 WL 7180473, at *4 (E.D. Mich. Nov. 16, 2015) (recognizing that 12 C.F.R. § 1024.41 provides a private cause of action). Under 12 U.S.C. § 2605(f), an individual may recover

> an amount equal to the sum of . . . any actual damage to the borrower as a result of the failure [] and . . . any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1). If the borrower's suit under 12 U.S.C. § 2605 is successful, the

borrower is entitled to "the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(3).

Damages are "an essential element" of a RESPA claim. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). As stated above, RESPA recognizes two types of damages: (1) actual damages the borrower sustained as a result of the RESPA violation and (2) "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). "Though there is no magic number of violations that create a 'pattern or practice of noncompliance,' courts have held that two violations of RESPA are insufficient to support a claim for statutory damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016) (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.,* 923 F.Supp.2d 430, 445 (E.D.N.Y. 2013).

The Court finds that the Complaint fails to sufficiently allege that Plaintiff submitted a "complete loss mitigation application" more than 37 days before the foreclosure sale. *See Lage*, 839 F.3d at 1009 (a loan servicer's duty to evaluate a borrower's loss mitigation application, "is only triggered when the borrower submits a 'complete loss mitigation application more than 37 days before a foreclosure sale.'") (quoting 12 C.F.R. § 1024.41(c)(1)); *Gelinas v. Bank of America, N.A.*, No.16-1355-RAJ, 2017 WL 1153859, at *4 (W.D. Wash. Mar. 28, 2017) ("The language of the provision plainly establishes that a 'complete loss mitigation application' is required for the RESPA provision to apply."). In addition, the Court finds that the Complaint fails to sufficiently allege damages. *Corazzini v. Litton Loan Servicing LLP*, No. 09 Civ. 199 (MAD) (ATB), 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2011) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff[.]" (citation and internal quotation marks omitted)). Even if not waived under ARIZ. REV.

STAT. § 33-811, the RESPA claim in Count VII must be dismissed for failure to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 568.

## II. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** granting Defendant's Motion to Dismiss (Doc. 24).

**IT IS FURTHER ORDERED** dismissing with prejudice the Plaintiff's Verified Complaint (Doc. 1-1 at 5-16).

The Clerk of Court shall terminate this case.

Dated this 20th day of June, 2017.

Eileen S. Willett
United States Magistrate Judge